Classes and so forth, and even Article 3 judges may not be able to get you out from the penalty of not being in class or whatever happens, so we're trying to let those who want to get out, but we will call the second case, 22-5036A, Mr. Chavez v. Plan Benefit. I think we've kind of reset. Okay, Counselor, we'll go to that. May it please the Court, I'm Al Holifield, and I'm here with Co-Counsel Josh Romero. I'll be addressing the standing arguments today, and my Co-Counsel will be addressing the 23B arguments that were raised in the 23F appeal. Defendants ask this Court to reject Plaintiff's novel approach that they have Article 3 standing to pursue claims on behalf of 290,000 participants and other plans for alleged excessive fees when named plaintiffs have not paid all of the fees paid by other participants. Plaintiffs do not have the injury in fact resulting from fees they have not paid. The proposed class involves over 290,000 participants and 3,342 other plans sponsored by over 2,000 other unrelated employers with many different fees. A traditional risk of class action typically involves a class plaintiff representative suing over a fee, and it may be against an employer, fiduciary, or it may be against a mutual fund company that has a fee that may be in all plans, but it's the same fee. It's the same calculation. It's the same injury. It's the same contract. Can I ask you just a quick question? Sure. And then I'll take your time. When the matter was first downed before Judge Sparks, was the standing issue teased out in that proceeding, or did you get involved in these facts? I mean, as I've read it, I know it's been up to our Court to back down the standing. I'm not suggesting that waiver it. I'm just curious to me. It's a threshold issue. You know, was it teased out at all? You have raised a great question, Your Honor, and we have raised standing and a motion to dismiss. There's a second motion to dismiss filed. It was raised at class. This is the fourth time, Your Honor, we've raised this issue. It just was never ruled on? It's been ruled upon. We just disagree with the ruling, Your Honor. All right. Sorry to throw you off. It just made me wonder, since this is the second trip here, if that threshold issue wasn't put up, or whether there was a ruling or not. But anyway, press ahead. Your Honor, this case, there's a lot to untangle in this case. There's thousands of different plans. There's health plans. There's retirement plans. There's different employers, fiduciaries, thousands of different arm's length negotiated agreements, which define the fees that are the subject matter of this case. And, Your Honor, I'll give, for instance, one of the fees that plaintiffs complain about that is excessive is surrender charges. If the claims were based solely on a one-fee case, going back to my prior example, a one-fee case, solely on surrender charges paid by the class members, there would be no question that plaintiffs do not have standing. Because the plaintiffs did not allege that they ever paid surrender charges or that they ever paid. They did not pay. It was not part of their contract. This fact's undisputed if you look at the contract on the ROA site 4930. However, plaintiffs claim standing based on the generalization, conclusory arguments that all fees, even if they didn't pay them, are excessive and they have standing to sue on behalf of those who may have paid those fees, but they did not. And that's the problem with this case. The plaintiffs cannot avoid constitutional standing scrutiny by making generalized, conclusory allegations that all fees are excessive when they have not paid all fees. Well, if I'm not, I could be missing. But it seems that the plaintiffs are saying, yeah, that's true, but we're suing based on common issues relative to everybody. And to that, you know, we're joined. There's no requirement that we have to pay them, maybe oversimplifying it. But to say, you know, we're honing in. So you're arguing for them to have standing, they've got to be on all fours across the board on all the fees, right? Well, they have at least got to have the injury, Your Honor. And to get to your point, in TransUnion, the Supreme Court case said, standing cannot be dispensed in gross. Plaintiffs must demonstrate standing for each claim they press, for each form of relief they seek. And if you take that case and look at the personal injury standards of what's got to be shown for standing, then it looks at what do they personally injure by suing over fees they never paid. And the issue is the court below here decided that the conclusory argument of all fees is fine and just looked at the terms of the trust, and the terms of the trust never defined any of the fees. But there was two other cases in the Northern District of Texas that took a different approach that rejected this. The Perkins and the Lucazio case came out and they said, in Perkins particularly, every named plaintiff who represents a class must alias and show they personally have been injured, not that the injury has suffered by another unidentified member of the class to which they belong. And that case is also agreed with by Lucazio, another Northern District case. Is this a first impression issue for us? I know there were some district courts that went a different way, but as far as the Fifth Circuit, is this, are we necessarily caused to? I don't think it's a first impression. I think it's just a general standing question, like the Ortiz question about whether this is a denny or, I don't think this court has the reason. We saw some cases where some courts said there was standing, and then another one, you're talking about Northern District of Texas, where the judge says no, there's not, allow room to amend, etc. But I didn't see the Fifth Circuit case, so I'm just wondering if this is teed up. The Fifth Circuit has not ruled on this, and basically the two Northern District cases have said specifically that this issue has not been addressed, and Judge Yackel in this case said this has not been addressed. There's no guidance. And I'm out of time, Your Honor. All right, thank you. Thank you, Your Honor, may it please the court. This court previously instructed the district court that automatic certification under 23B1B was inappropriate. In fact, Judge Smith expressly warned against adventurous applications of 23B1B and reliance on generalizations that ERISA class cases are sometimes certifiable under 23B1B. While Judge Yackel's opinion is certainly more thorough than Judge Sparks, it reaches the same conclusion, and that is it relies on generalizations that ERISA class action single fund cases are typically certifiable. Now certification in this case is particularly troublesome for my client, Fringe, and other small companies that provide benefits to small companies like Plaintiff's Employer, TRDI, who employ janitors and the like. As the Fifth Circuit has certainly recognized, class certification has serious impacts on these small companies and can drive them into the ground. I want to talk about 23B1B. As the court knows, this is a non-opt-out class action that can only be maintained when separate actions would create risk of adjudications that would be dispositive of absent class members or would substantially impair their ability to protect their interests. Here, as you heard from Mr. Holifield and you saw in our briefs, there are many different plans, many different fees, and varying fees. Separate adjudications simply would not be dispositive of absent class members' interests. And the easy example is if there's an adjudication of fee X that it's excessive or not excessive, that has no bearing on fee Y, whether it's excessive or not. And we give a number of examples in our brief. I won't go through those, but to be clear, the plaintiffs are members of one plan among the 3,300 different plans. They are seeking to step in the shoes of plans in which they didn't participate for fees which they didn't pay involving employers who they have no connection with. And that's really the fundamental problem that poisons standing 23B1B and 23B3, Your Honors. There simply is no cohesive class. Again, the questions raised by each individual will far outnumber any questions that might be resolved uniformly. What these folks are trying to do is, as strangers to the thousands of different plans and thousands of different fees, is to interject their own objections to plans and employers who they have no connection with. Now, in certifying the class below, the district court relied on two flawed rationales. The first is issue preclusion. The court said, well, there may be some decision that impacts the defendants down the road. And then the court relied on speculation that the defendants, in light of a ruling, may change their contracts. The problem is there is no legitimate legal basis to certify a class under issue preclusion or defendants' future conduct. In fact, if the court were to adopt that rationale, what it would mean is every ERISA case is certifiable. And that's kind of the floodgates that the first panel in this case warned against. Because if you just say issue preclusion or you may change conduct in the future, floodgates are open. There's really nothing to stop certifying every ERISA class action in the country. And contrary to Judge Smith's warning and the Supreme Court's warning in Ortiz, the district court relied on this novel application of 23B3 and the generalizations of ERISA class actions. And in doing that, the district court erred. Your Honors, I want to turn to 23B3. That's the predominance test. Certification is only appropriate there when common questions of fact or law predominate. Importantly, this is a stricter standard than the commonality test that's required under 23A. There are two key issues here. You have alleged fee excessiveness and then you have functional fiduciary status that prevents certification. I want to talk about fee excessiveness. Given the multitude of varying fees and plans, individual questions will undoubtedly predominate. It will literally require, with this number of fees and this number of plans, thousands of mini-trials on whether fee X is excessive, whether fee Y is excessive. And again, the plaintiffs paid nearly none of these fees. And so there is simply no predominance in any of this. Thousands of mini-trials is what would be required. Counsel, did I understand correctly, the district courts seem to be focused on the actions of the trust. Does that not create a lowest common denominator, if you will, in terms of liability? It seems like that's the linchpin on which the class can be, or at least the district courts certify the class. Am I incorrect in saying that? Judge Eaglehart, you're exactly correct. That's what the district court relied on. The district court said there are two trusts, one for retirement and one with health. Here's the problem. The plaintiff doesn't complain about anything the trust did, doesn't complain about the trustee, doesn't seek to remove the trustee. They are complaining about the excessiveness of the fees. And within each of those trusts, that's where the 3,300 separate plans reside. The trust is merely a pass-through entity. What I was going to ask you, maybe perhaps you've just answered it, what role does the trust play in terms of those fees and charges? Or is it just a repository for money to be administered in good faith? What role does the trust play in operation? Sure. Judge Eaglehart, I would liken it to a bank account. It is a bank account that holds funds for all of the separate plans. And they're segregated, to be clear. And so the trust, sure, a common denominator, but it has no bearing on excessive fees. Because what you need to look at, and the plaintiff references the trust agreements a lot, the problem with that, of course, is there are no fees in the trust agreement. You'll not find a single fee in the trust agreement. What you have to go to to find the fees about which they complain is the separate retainer agreements signed between the employer and my client. They're separate. They've got separate fees. They've got separate plans. There's a multitude of differences there. And that's what makes this class not certifiable, because there's simply no common answer to whether fees are excessive or not. You can't look to the trust. You've got to look to individual plans. Now, the briefs referred to a circuit split. What is that on? Your Honor, I think that goes to the standing. I don't believe that the Fifth Circuit has resolved the question of whether plaintiffs in a single plan can represent thousands of absent class members. But other circuits have gone different ways on that. Is that correct? Well, the plaintiffs point out the phallic case, and that's out of the Sixth Circuit. The problem there is it's not analogous to this case. In the phallic case, what the court was looking at was that there was a common methodology for calculating the fee. And so that was the kind of unifying denominator there. Here, you just don't have that. And so first, I would say phallic is not on point. Second to that, it relies on Title VII discrimination cases, and it pushes aside Article III standing. And it says for the betterment, basically, of our law, we're going to not pay attention to Article III, and we're going to focus elsewhere. And so, Your Honor, to answer your question, I don't think there's a split. They rely on phallic, and I don't think it's applicable here. Let me finish up and address the functional fiduciary status. This is important because typically, when I think of fiduciary status, I think of the general common law fiduciary status, duty of loyalty, duty of care. It's much different in the ERISA context. It's functional fiduciary status. And I will refer the court to the Teats case out of the Tenth Circuit. And what that case is, it's really the key case on functional fiduciary status. And what it says is you've got to look at the agreement between the parties. Could you charge these fees? Could you do A, B, C, and D? And if the defendant acted consistently with that contract, there was no discretion. There was no functional fiduciary status. The importance of that is here you've got to look at every single plan, 3,300, and the actions of defendant with respect to each of those separate 3,300 plans and ask that same question. And let me be clear. The services aren't uniform. There is no uniform activity. And I would point the court. This is an important document. It's at Record of Appeal 555. That is the plaintiff's own plan. And the plaintiff's own plan customized the services that my client provided. And so when the plaintiff stands up here and tells you the services are the same, I would just ask the court to look at the plaintiff's own plan. Thank you, Your Honors. Okay. Thank you, sir. All right. We have Ms. Chavez and Ms. Wasson. You've been counseled throughout on all these proceedings? Yes, I have, Your Honor. We filed this case in 2017, and here we are. May it please the Court, I'm Nina Wasso for the plaintiff's appellees. The district court did not abuse its discretion in certifying this case as a class action. As Your Honors have noted, there's been two full rounds of briefing, evidentiary submissions, multiple arguments. I think this is either the fourth or the fifth time I've argued class cert in this case. And Judge Yackel did exactly what the Fifth Circuit asked it to do, asked the district court to do in its previous order, which is detail with specificity its reasons for certifying the class and stay close to the facts and law of the case. The district court found, based on its thorough review of the evidence, that defendants enter into standardized contracts with all the employers that participate in these two employee benefit trusts, provide a common set of services to all of those plans, and charge materially similar fees to all plans that participate in the trusts. The key liability issues in the case are whether the defendants exercise enough control or authority over the plans to be treated as functional fiduciaries under ERISA, and whether defendants breach those duties by collecting kickbacks and excessive fees. Class-wide determination of those issues is appropriate. So I'd like to start with the standing issues. Just like I asked them, was standing raised in front of Judge Sparks? It was. It was raised in the motion to dismiss, and Judge Sparks found that the named plaintiffs had standing. There was no appeal of that order. Then it was raised again at class cert in front of Judge Yackel, well, in front of Judge Sparks and Judge Yackel, and Judge Yackel actually issued a separate order of outstanding, which is not part of this appeal. There wasn't a request for an interlocutory appeal. Am I correct that the same amount was deducted from each participant's account? In the whole class? Yeah. No, it's not a flat fee structure, Your Honor. There are small variations in the amounts of fees paid by each individual person. But from the plans? So, again, the fees are not absolutely uniform from one plan to the next. There are slight variations, which I'll get to in a moment. But if I could just address the standing issues briefly. There's not and never has been any question that the named plaintiffs here have individual standing to pursue their own claims. Each of them has suffered a concrete and cognizable injury from each of the defendants, and the claims that have been asserted in the case, each of them has each of those claims. That's never been a question in the case. Defendants' argument is that the named plaintiffs lack standing to assert their claims on behalf of all of the absent class members. But this conflates Article III standing and the requirements of Rule 23. Defendants could have argued on appeal that the adequacy and or typicality requirements of Rule 23A weren't met, but they did not, and any such argument is waived. That plaintiffs' ability to represent participants in other plans is not an Article III standing issue is most clearly supported by the case Fallick v. Nationwide. And, Your Honor, Judge Wiener, you asked about a circuit split. If the court were to adopt defendant's argument raised for the first time in appeal that Fallick was wrongly decided, that would create a circuit split. There is no circuit split now. But there's no holding by the Fifth Circuit on the point, right? There's not, although there is language in the Deepwater Horizon case by the Fifth Circuit, and this was quoted in the district court's opinion. The Fifth Circuit said, whether or not the named plaintiff who meets individual standing requirements may assert the rights of absent class members is neither a standing issue nor an Article III case or controversy issue, but depends rather on meeting the prerequisites of Rule 23 governing class actions. So that is from the Deepwater Horizon case. Well, at least the district court, the Northern District of Texas, and the other ones, from what I read, say the Fifth Circuit has never spoken, so they've kind of gone. So it's not less whether there's a circuit split. There's apparently no law on the Fifth Circuit. That's why I asked counsel. Is this teed up of a question that we have to answer? Yes. I think it is a question that has to be clear on where counsel walks. Yes. The Perkins case that Your Honor is referring to actually doesn't deal with this specific issue because in that case the named plaintiffs didn't have individuals standing to assert their own claims because there was a question about investment in a particular fund that they hadn't ever invested. There was a question about fees in a fund that they hadn't ever invested in. Here, there's no question that the individual plaintiffs are participants in the two trusts at issue, and they have received the services that are subject to dispute, and they have been charged fees. Well, I mean, facially, maybe for me, I don't know. Counsel's opposite argument is you're talking about 290,000 potential plaintiffs, and standing being what it is facially sort of makes sense, not that that's the test, given the nature of standing itself that you need more than just a nexus, a part of it, in order to be able to, you know, stay in the case. I understand your argument is as to the trusts, and that's the common element. He says, well, the trusts really don't do anything. The trust is a conduit through which the monies flow, so that's kind of where the tension, and I know you're going to spend all your time with standing, but obviously we have to address the standing or we don't get to the rest of it. Of course, and the status of the trust and what they do or don't do, I'll certainly speak to that, but that isn't really the question with standing. The question with standing is did these named plaintiffs suffer an injury, in fact? And any questions beyond that? Well, he says, yes, they suffered an injury, in fact, but he says they suffered an injury only as to a limited piece of it, and so they say, well, you don't complete the Gorson. Yes, they suffered an injury, in fact, but only as to a small aspect of this. They don't suffer an injury as to the whole of it, and if you want a certified class of 290,000 people, they need to have suffered an injury as to all of it. I mean, facially that kind of makes sense. It doesn't, though, Your Honor, because that's really what Rule 23 is for. There would be no reason for Rule 23 if it was a question of standing whether the named plaintiffs had enough in common with the absent class members to act as their representative. That's what Rule 23A, adequacy and typicality, are all about, and those are not before the court right now. Well, I don't want to harp on this too much, but am I correct that the record reflects that the same amount was deducted from each person's plan? No, Your Honor, that's not correct. Okay. There's a number of plans, so if we're talking about the retirement trust, perhaps I'll move on to Rule 23B, since that's what your question is really directed towards. There's a number of plans that participate in the retirement trust. They are assessed a number of fees. You can see I'll actually use the chart that defendants refer to quite a bit. It's the record page 4930, and you can see that there's a number of fees. All the plans are charged the same categories of fees. There's an annual retirement plan fee. There's a monthly participant administrative fee. There's a monthly plan administrative fee. There's an investment contract charge. Not all of the plans are charged that. However, the monthly plan administrative fee is adjusted for those plans that don't pay the monthly investment contract charge. It's the same categories of fees for every plan, and there's a small range that each plan is subject to. The district court noted that there's something called pricing grid that defendants use to set the fees for every plan in the retirement trust, and there are some slight variations. We've never argued. Counsel, correct me if I'm wrong, but this might be a good time for me to ask you about a statement in the district court's opinion where it says, we have put forth a study identifying market benchmarks for defendant services and intend to offer expert testimony showing defendants' base charge per participant is too high. That's in the March 29, 2022 order. Too high based on what standards. Is there any kind of fleshing out of that, or is that just a statement that what's the support for the statement? Obviously the judge made the statement. What is the support offered? The support for the statement that there will be expert testimony about the average range. What standards was this estimate based on? I'm not totally sure I understand Your Honor's question, but let me try to answer it. The district court was noting that there will be the way that damages or losses would be calculated to the trusts on a class-wide basis is by comparison of the range of fees that defendants charge, a small range of fees, to industry standard fees for administrative and record-keeping services for which there is a market. And that's something that plaintiff's expert submitted a declaration that's been unrebutted explaining this is how I would do this on a class-wide basis. The expert wasn't saying and didn't say that only average fees are not excessive. That's not an argument that plaintiffs have made or intend to make. But what we intend to show is that the entire range of fees charged by defendants is way beyond the average, way beyond what would be considered normal or reasonable in the industry for the basic administrative and record-keeping services that defendants are providing. And that the small range of fees here is really a red herring because there's these two trust structures. I want to take issue with the characterization that defendants have made of the trust as simply bank accounts. That's not correct. First of all, the trust agreements, master trust agreements, which every plan sponsor adopts, those are the main source for defendant's fiduciary status. They're not named fiduciaries. They have acquired the status of fiduciaries under ERISA because they have reserved to themselves in the trust agreement the right to select service providers for the plans, the right to withdraw trust assets and to pay their own fees and the fees of other service providers. And they have exercised those rights in a way that maximizes their own compensation. So, for instance, for the retirement trust, defendants have selected Nationwide and Transamerica to provide investment management services to the retirement trust. All employers choose between those two investment providers, and defendants have side agreements with those two investment providers that result in their receipt of excessive compensation. That's the thrust of Plaintiff's Argument, and it's backed up by the trust agreement because the trust agreement is what gives defendants that discretion. I'd like to point your honors to the Rosso case, which was subsequent to the Teats case. I know them both very well. I litigated them both. And Rosso said if a service provider exercises discretion pursuant to a contract, it can still be an ERISA fiduciary, even if the discretion is authorized by contract. It doesn't have to be acting ultra-virus. It doesn't have to be taking some action that's unauthorized by contract. It merely has to be exercising discretion and management and control. That's what ERISA Section 1002.21, that's the functional fiduciary definition in ERISA, provides. So our argument is that the defendants here have exercised that discretion and control over the plans by virtue of their operation of these two trusts. Let me see. I'd like to speak for a moment before I run out of time to Rule 23b-3. Well, actually, let me go back to Rule 23b-1 for a moment. Defendants have referred in their argument to these plans as strangers to each other or plaintiffs as strangers to the other plans. That's not the case. The connection between the plans here is their participation in the trusts, and plaintiffs' claims address the way that the trusts are structured and run for all of the plans. So other participants in the trust will be affected even if the court only decides for the named plaintiffs. For instance, defendants could be required to choose different service providers for the plans, for the trusts, that is, and that would affect all of the plans that participate in the trusts. If defendants' collection of indirect compensation violates ERISA for the named plaintiffs' plan, that would mean that defendants would have to change their arrangements with Nationwide and Transamerica for everyone in the trusts. And that's why this case fits within the Rule 23b-1 criteria. What the Fifth Circuit said in its previous decision is the fact that it's a historical example of a Rule 23b-1 class action is not enough. You have to engage with the facts of this case, and that's exactly what the district court did. The district court reviewed the many exemplar plans submitted by the parties and found that dissimilarities had been exaggerated by the defendants. And those exaggerated dissimilarities really form the basis of defendants' Rule 23b-3 argument as well. Defendants take issue with the plaintiff's proposal to compare their fees to industry standards, but it's well established that ERISA prohibits imposition of excessive fees, and excessiveness is often measured by comparison to industry standards. Defendants don't propose any alternative to that. They haven't identified any specific problems with the methodologies proposed by plaintiffs' unrebutted expert declarations. And in any event, the excessiveness of the fees is a merits issue, and plaintiffs submit that they've provided substantial evidence that the excessiveness of the fees can be evaluated on a class-wide basis because the fees are sufficiently similar. Here, the conduct that is violating ERISA is all the same. The structures in place are so similar that the basis for liability is going to be the same in all cases. The only thing that's going to vary is the amount by which the fees exceed reasonable fees, and that's a damages issue. That's math. It's not dissimilar to, say, a wage and hour case, where different employees receive different amounts of underpayment of wages, and that doesn't prohibit or preclude class certification. It's just simply individual variations in the amount of damage suffered. But the liability issue is common class-wide, and individual variations in the amount of damages don't preclude class certification. One last point, Your Honors, and I started to allude to this when I was talking about standing, but I do just want to note for the record since I didn't file a 28-J letter on this because there were not new cases, not cases decided since the briefing in this case, but I do want to note that Fallick, the Sixth Circuit case we've been talking about with standing, has been endorsed by the First, Second, Fourth, Eighth, Ninth, and Eleventh Circuits, in addition to the Fifth Circuit's language in Deepwater Horizon that I read before. So this is a very well-established principle that as long as the named plaintiffs have suffered a concrete injury, have met the requirements for Article III standing in their own right, whether they are able to represent a class is really a question of whether they meet the Article, sorry, the Rule 23 requirements. Did you address the B-3? I believe I did, but I can talk about it a bit more. The main arguments that defendants have advanced in opposition to certification under Rule 23B-3, well, they're all about predominance. I do want to note that there's no argument about superiority. It's clear that all of the superiority factors are met here, many small claims, no other pending cases against defendants, the forum's desirable, et cetera. Their argument about Rule 23B-3 is you can't determine fiduciary status on a class-wide basis because all the plans are so different, and I would just point to the district court's factual finding that was not an abuse of discretion after having reviewed many, many exemplar plans that there really are differences that are material, and that defendants have the same powers, duties, and responsibilities with respect to all of the plans that participate in the trusts. There's arguments in their 23B-3 section as well about breach and about how plaintiffs will prove excessiveness of fees on a class-wide basis. The evidence of the excessiveness of fees is going to be data about how much defendants collect in fees compared to data that the experts will present about nationwide market industry standard rates for administrative and record-keeping services for retirement and welfare benefit plans. And I just also want to note that defendants really give short shrift to the last 10 years or so of Supreme Court jurisprudence on class-wide damages. They ignore the Comcast case. They misconstrue the Tyson Foods case. What Comcast says is that class-wide calculations of losses or damages may be done using models or formulas if they measure only those losses or damages attributable to the class's theory of liability. And that's what plaintiffs have offered here. I believe I'm now out of time unless Your Honors have any additional questions. Thank you. Back to you, Mr. Romero. Thank you, Your Honor. Let me apologize from the outset for jumping around. I want to answer some of the questions that the Court had. First, Article III standing. That is fundamental to our jurisprudence. And what I hear from my counterpart on the other side is the Court ought to put on blinders and ignore Article III standing and then hope that Rule 23 ferrets it out. But that's unfortunately for the plaintiffs not the way it works. An easy example, suppose I go to Wal-Mart and I buy a battery and the battery is defective. Under plaintiff's theory, I could sue for the defective battery, but I could also sue for any other product that Wal-Mart sold that a plaintiff may say was bad. The ice cream didn't have 100% vanilla in it or whatnot. And suddenly I would have Article III standing to represent everyone who ever purchased any product at Wal-Mart because I purchased a defective battery. And that just flips Article III on its head, Your Honor. I want to talk about the factual findings. I heard my colleague mention factual findings. Let me be clear. The Court did not make factual findings. Essentially what the Court did was look at contracts and conclude that it can all be done in one proceeding. But that is a legal question, construing contracts. And that's what the Court is asked to do is to construe these contracts. And so with respect to the District Court's findings, they're entitled to no deference. This Court is well-equipped to review contracts and make a legal determination. This isn't a matter of the Court judging the credibility of a witness or whatnot. FALIC. FALIC is clearly a distinguishable. Again, that dealt with methodology of calculating fees. That's not the case here. There is no reason to make a circuit split because that case is different. It relies on different facts, different principles. And in ruling in our favor, you don't have to create a circuit split. My colleague talked about categories of fees. That's not a certifiable issue because when this case goes to trial, if it went that far, you couldn't just look at categories of fees. You'd have to look at specific fees and decide if that specific fee is excessive given the factors that their own expert says you have to look at, such as geography, the entirety of all the fees listed. And so it literally is going to devolve into at least 3,000 mini-trials on fees, Your Honors. Judge Inglehart, you asked a question about their expert. I'll tell you what their expert says. The expert comes up with an average and says, this is the average fee for X service. And anything below that is unreasonable, is excessive. That, Your Honors, is not reliable. Once you take out what the median is, then it devolves into zero. It suddenly becomes zero because everything, once you pull those fees, it's just math that comes to zero. That's not reliable. And that would require, again, thousands of mini-trials to do that adjudication. The trust agreements. Those, again, have no bearing on this case. You can look at the trust agreements and you'll see no fees. She says that we get to select service providers. In the trust agreement, and this is key, the trustee has to consent to the selection of service providers. And going back to TEATS, that means there's no discretion, no functional fiduciary status. She mentioned that my client withdraws trust assets. Well, it withdraws the agreed-upon fees in the retainer agreement. And she mentioned the Rosso case, and this is an important distinguishment. The Rosso case had an agreement that said the service provider can withdraw fees at its discretion. That's not here. Every fee that we withdraw is disclosed in black and white in the retainer agreements. Well, isn't it a fact that the same amount was deducted from each person's plan? Your Honor, that's just not accurate. Different fees were withdrawn from different folks' accounts. These plaintiffs were not subject to a number of fees about which they complained. So you have the amounts that are different, and you have fees that don't exist for these plaintiffs. And so this is absolutely not a case where each month a dollar is withdrawn from a participant's account. That would be a much different case. Here you have plans where some fees are zero compared to other plans where they're a percentage of the deposits compared to other plans where they're a percentage of the assets. And so this is really apples and oranges and can't be done in one fell swoop. Thank you, Your Honor. All right. Thank you, Mr. Kemp, both sides. I appreciate the briefing and argument. The case will be submitted.